UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-33-GWU

ROGER D. NOBLE,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed <u>Noble v. Barnhart</u>, London Civil Action No. 01-280 (E.D. Ky.) to appeal from the negative administrative decision on his application for Disability Insurance Benefits (DIB).   After the undersigned's Memorandum Opinion, Order and Judgment of August 30, 2002 (Tr.323-37), the case was returned to the agency for further consideration of the plaintiff's mental restrictions. (Tr. 336-7).  Another negative administrative decision issued (Tr. 312-19) and the case is again before the undersigned.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind

1

shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human

2

Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is

significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The sole ground for remanding the case in 2002 was to obtain clarification of mental restrictions assessed by James Leisenring, one of two psychological consultative examiners.  A previous psychological examiner, Dr. Carl McGraw, had found that Mr. Noble had a "substantial amount of depression," in addition to functioning in the range of mild mental retardation.  (Tr. 266).  Mr. Leisenring, the only other examiner, had indicated that Mr. Noble was malingering on IQ testing and achievement testing, and estimated that he was actually at the range of borderline intellectual functioning to low average intelligence.  (Tr. 284).  The court noted that there was substantial evidence to accept Mr. Leisenring's estimate of borderline to

low average intelligence, based on the plaintiff's work history and his failure to show significant deficits in adaptive functioning before age 22.  (Tr. 333).

In addition, however, Mr. Leisenring had diagnosed an anxiety disorder as well as a "provisional" dysthymic disorder.  (Tr. 284).  While Mr. Leisenring felt that the plaintiff was malingering on intelligence testing, he specifically noted "seemingly 'legitimate' excessive mixed depression and anxiety."  (Tr. 285).  On a functional capacity assessment form, Mr. Leisenring stated that the depression and anxiety would result in no useful ability to behave in an emotionally stable manner, and would result in a "seriously limited but not precluded" ability to maintain personal appearance and relate predictably in social situations.  (Tr. 287).  A remand was required in order to address these reported limitations.

On remand, the defendant obtained an additional psychological evaluation by Dr. Stuart A. Cooke.  Dr. Cooke examined the plaintiff on April 1, 2003.[1]  He also reviewed Mr. Leisenring's report.  (Tr. 364).  When asked about nerve problems, Mr. Noble reportedly answered "I stay dizzy.  That's about it."  (Tr. 365).  Most of Dr. Cooke's evaluation focused on the plaintiff's intellectual functioning, with IQ and achievement testing again being administered and again producing a diagnostic impression of malingering.  (Tr. 366-7).  Dr. Cooke did not diagnose any anxiety or

---

[1]The plaintiff's Date Last Insured (DLI) was December 31, 1998, meaning that he had to establish disability prior to this date in order to be eligible for benefits.  (Tr. 313).

07-33  Noble

depressive disorder, and concluded that he could not address functional capacity
because of malingering.   (Tr. 367-9). He did not discuss Mr. Leisenring's
restrictions.

A psychologist, Dr. Doug McKeown, testified as a medical expert (ME).
Although he did not have Dr. Cooke's evaluation available for review, and had not
heard the plaintiff's testimony, he testified that, based on the reports of McGraw and
Leisenring, there was not enough evidence to support a conclusion that Mr. Noble
met the requirements of LOI 12.05C.  (Tr. 412).  Although this was the focus of his
testimony and of the questioning by the ALJ and by counsel for Mr. Noble,
somewhat surprisingly in view of the fact that the case was not remanded for further
development of 12.05C issues, Dr. McKeown also touched on the issue of anxiety
and depression.  He incorrectly stated that <u>both</u> the diagnoses of a dysthymic
disorder and anxiety disorder were "provisional,"  and added that there was no
evidence that the plaintiff had ever "sought out treatment for those symptoms, or is
even being treated for those symptoms." (Tr. 413).[2]  The ME later stated, however,
that he did not have any reason to disagree with Leisenring's conclusion that Mr.
Noble had seemingly legitimate mixed depression and anxiety.  (Tr. 418).  He did

---

[2]The transcript of the administrative hearing then reports the ME as saying: "It is
not felt that those would be available for consideration, or for department considerations
under anxiety or depressive dysfunction."  (Id.).  The meaning of this sentence is
unclear.  It is not clear if it contains typographical errors from being transcribed.

not discuss what functional restrictions, if any, would flow from these concededly legitimate conditions.

In his decision, the ALJ stated that he accepted the ME's opinion.  (Tr. 314). He adopted the mental restrictions from the prior administrative decision, as well as the testimony of a vocational expert (VE) given at the February 17, 1998 administrative hearing.  At that time, the ALJ asked the VE whether the plaintiff could perform any jobs if he were limited to "light" level exertion, with no prolonged standing and walking and excess of one to two hours a day, and also had the following non-exertional restrictions.  He: (1) could have "limited" exposure to dust, gases, fumes, temperature extremes, and excess humidity; (2) could do no repetitive bending, twisting, stooping, kneeling, crouching, crawling, climbing, or balancing; (3) could not be required to operate vibrating hand tools; and (4) was restricted to low stress, entry-level work with simple 1-2-3 step instructions, no frequent changes of work routines, limited interaction with the public, and no requirement for literacy.  (Tr. 99-100).  The VE responded that there were jobs that such a person could perform.

The plaintiff maintains on appeal that the court's remand order was not complied with.  The court agrees.  The functional restrictions accepted by the ALJ were not supported by either of the examiners in 1998.  Mr. Leisenring's restrictions based on anxiety and depression were the least restrictive, but they were still

7

07-33  Noble

incompatible with the hypothetical factors. It was necessary, therefore, to obtain additional evidence from an acceptable source to discount them, if the ALJ chose not to accept them.  The 2003 evaluation by Dr. Cooke focused almost entirely on IQ issues, rather than restrictions based on anxiety/depression. He did state that the plaintiff's current restrictions were unknown, but did not relate this current opinion in any way to the relevant period before December 31, 1998. While Dr. Cooke was furnished a copy of Mr. Leisenring's report, he did not discuss it, or provide any specific opinion that the Leisenring restrictions would not have been valid prior to the DLI.  As previously noted, Dr. McKeown's testimony was contradictory, and at least partially based on a criticism of the plaintiff for not receiving treatment for his condition. As the Sixth Circuit has put it, "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989). Therefore, the court concludes that neither the report of Dr. Cooke nor the testimony of the ME provides evidence to support the mental hypothetical factors.[3] A remand will be required for further development of this issue.

In addition to the mental factors, and as the Commissioner concedes, there is an inconsistency in the terms of the hypothetical question, which does not

---

[3]The commissioner suggests that Mr. Leisenring's restrictions were speculation, based on language in the narrative portion of his report.  (Tr. 285).  However, Mr. Leisenring did not qualify his restrictions in the Medical Source Statement.  (Tr. 287).

8

07-33  Noble

specifically limit the plaintiff to sitting in excess of one to two hours a day, as found in the administrative decision.  (Tr. 99, 316).  This is also an issue that can be addressed with new VE testimony on remand.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 12th day of December, 2007.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**